USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/25/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                               :
SREERAM MALLIKARJUN,                :
                                                 :
                        Plaintiff,      :             1:25-cv-4045-GHW
                                                 :
              -v-                    :         MEMORANDUM OPINION &
                                                 :                 ORDER
THE TRAVELERS HOME AND MARINE    :
INSURANCE,                             :
                                                 :
                     Defendant.     :
------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.      INTRODUCTION

      In April 2023, Plaintiff Sreeram Mallikarjun was traveling in India when his apartment in New York City flooded. From India, Mr. Mallikarjun contacted his insurer, Defendant The Travelers Home and Marine Insurance ("Travelers"), to report the flooding, explain that he was currently in India, and to provide permission for Travelers to enter his apartment. Following his return to New York City, Mr. Mallikarjun attempted to file a claim with Travelers, but, he alleges, Travelers intentionally delayed processing his claim. Nearly two years after his apartment flooded, Travelers disclaimed coverage, prompting this lawsuit.

      Mr. Mallikarjun's initial complaint alleged that Travelers had wrongfully denied coverage for damage caused by the flood and sought recovery under the insurance policy for remediation and repair costs. The parties were in the midst of discovery when Mr. Mallikarjun filed an amended complaint, asserting a stretch of causes of action under both state and federal law. Defendant moved to dismiss all of those claims—except for Mr. Mallikarjun's original breach of contract claim seeking damages to restore his apartment—pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Plaintiff fails to plausibly state a claim against Travelers with respect to all of his new causes of action, Defendant's motion to dismiss is GRANTED.

## II.    BACKGROUND[1]

In 2022, Mr. Mallikarjun purchased a homeowners insurance policy (the "Policy") from Travelers to insure his apartment at 350 West 42nd Street in New York City against physical losses or damage. *See generally* Dkt. No. 29-2, Ex. B at 4. The Policy provides coverage for certain physical damage to Mr. Mallikarjun's apartment, including losses resulting from "accidental discharge or overflow of water or steam" except that any such losses are not covered if they were "caused by accidental discharge or over-flow which occurs off the residence premises." *Id.* at 4, 17 (emphasis omitted). Under the terms of the Policy, Mr. Mallikarjun is the sole "Named Insured" and Apple Slice Homes LLC[2]—Mr. Mallikarjun's real estate business which he was partially operating out of his apartment—is the sole named "Additional Insured." *Id.* at 4–5 (identifying Apple Slice Home's address as Mr. Mallikarjun's apartment address). Other than Mr. Mallikarjun himself and his real estate business, no other entities or individuals are named as either insureds or additional insureds under the Policy. *See id.* at 4.

In April 2023, Mr. Mallikarjun was traveling in India. Compl. ¶ 6. On April 21, 2023, while Mr. Mallikarjun was in India, maintenance personnel for his building notified him that water was leaking from one of the units above his apartment. *Id.* ¶ 7. Because he was not in the country, Mr. Mallikarjun gave them permission to enter, inspect, and perform any necessary remediation in his absence. *Id.* ¶ 8. Mr. Mallikarjun was told that his apartment was "flooded" and that the damage was "extensive." *Id.* ¶ 9.

---

[1] Generally, the facts relevant to Defendant's motion are taken from the First Amended Complaint, Dkt. No. 24 ("FAC"), and are accepted as true for the purposes of this motion. *See, e.g.*, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And given Plaintiff's *pro se* status, the Court considers supplemental factual allegations made by Plaintiff in his initial complaint, Dkt. No. 12 ("Compl.") and in his opposition to Defendant's motion, Dkt. No. 31 ("Opp'n). *See Collins v. Goord*, 438 F. Supp. 2d 399, 403 & n.1 (S.D.N.Y. 2006) (deeming factual allegations contained in *pro se* plaintiff's brief to "supplement" his pleading).
[2] Apple Slice Homes LLC is not a plaintiff in this case.

Around May 3, 2023,[3] Mr. Mallikarjun first contacted Travelers to report the flooding and to provide Travelers permission to enter the apartment to perform an inspection in his absence at "anytime." *Id.* ¶ 12; FAC ¶ 2. But Travelers allegedly responded to Mr. Mallikarjun's "many" phone calls and emails by claiming that "no such [insurance] policy exists." Reply at 5; FAC ¶ 2. Travelers allegedly "deliberately delayed" processing Mr. Mallikarjun's claim; advising him that "some errors" resulting from "dated computer software" required corrections to be made to the Policy before his claim could be processed—a process that took months. Compl. ¶ 13; FAC ¶ 14. And, despite Mr. Mallikarjun's express permission and repeated follow-up phone calls, Travelers allegedly "failed to take any action to inspect the premises." FAC ¶ 13.

Mr. Mallikarjun returned to New York City in June 2023. *Id.* ¶ 16. Months passed, during which time, the units above his apartment were fully remediated. Compl. ¶ 17. Because he had not received any updates regarding his claim, Mr. Mallikarjun contacted Travelers sometime around December 3, 2024 to little avail. *Id.* ¶ 18. More months passed. FAC ¶¶ 22–25. Ultimately—after not receiving any response from Travelers—on April 21, 2025, Mr. Mallikarjun first filed this action in the New York Supreme Court, County of New York. Dkt. No. 1-1. Travelers removed the action to this Court on May 14, 2025. Dkt. No. 1.

Following an initial conference on July 17, 2025, the Court entered a scheduling order, which set deadlines for the completion of fact and expert discovery. Dkt. No. 21. Since that time, the parties were required to have been engaged in discovery. *Id.* (setting the deadline for the completion of fact discovery as December 1, 2025 and the deadline for the completion of expert discovery as February 24, 2026). On September 9, 2025—in the middle of the fact discovery period—Mr. Mallikarjun sought leave to file an amended complaint, which the Court granted. Dkt. Nos. 22 &

---

[3] Mr. Mallikarjun's FAC alleges that the claim was made on or about "May 3, 2025." Given the overall chronology of the facts relevant to this case, the Court assumes that Mr. Mallikarjun's reference to "2025" rather than "2023" is an inadvertent typo.

23.

Mr. Mallikarjun filed the operative complaint—the FAC—on September 17, 2025, asserting a variety of new causes of action under federal and state law. *See generally* FAC. On October 1, 2025, Travelers filed a motion to dismiss Mr. Mallikarjun's FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* Dkt. No. 30 ("Mem."). Defendant argues that Mr. Mallikarjun's amended complaint should be dismissed in its entirety—except with respect to his original breach of contract claim seeking damages under the Policy to repair his apartment. *Id.* at 2. Mr. Mallikarjun filed his opposition on October 29, 2025. *See generally* Dkt. No. 31 ("Opp'n). On November 5, 2025, Travelers replied, reasserting that Plaintiff's FAC fails to state a cause of action "other than for breach of contract" with respect to the alleged water damage incident. *See generally* Dkt. No. 32 ("Reply").

## III.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations and draws all inferences in the plaintiff's favor. *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809–10 (2d Cir. 2019) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)); *Chase Grp. All. LLC v. City of N.Y Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially

plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court may also consider documents that are "integral to" the complaint, meaning that the complaint relies heavily upon its terms and effects. *Id.* "[E]ven if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.* (internal quotation marks omitted) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.* (quoting *Faulkner*, 463 F.3d at 134).

Here, in addition to the well-pleaded facts in the complaint, the Court has also considered

the Policy,[4] which Plaintiff did not append to his FAC,[5] but which Defendant appended to its declaration in support of its motion to dismiss. Dkt. No. 29-2, Ex. B. The Court considers this document in deciding Defendant's motion to dismiss because the Policy is integral to Mr. Mallikarjun's complaint. The Policy is integral to the FAC because Mr. Mallikarjun asserts a breach of contract claim against Travelers, alleging that Travelers breached the Policy when it disclaimed coverage for any damage resulting from the flood.

Because Plaintiff is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . ." (citation omitted)). Courts must afford *pro se* plaintiffs "'special solicitude' before granting motions to dismiss . . . ." *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

IV.    **DISCUSSION**

In his FAC, Mr. Mallikarjun asserted a number of new "causes of actions." But some of Mr.

---

[4] Citations to the Policy reflect ECF's pagination.
[5] Mr. Mallikarjun did append what appears to be an earlier version of the Policy to his opposition to Defendant's motion, but the copy appended by Mr. Mallikarjun is not signed by him, and in any event, Mr. Mallikarjun does not dispute that the version appended by Defendant is the operative Policy. *See* Dkt. No. 31-1.

Mallikarjun's new causes of action are not causes of action at all. Rather, some of the purported "claims" alleged in Mr. Mallikarjun's FAC are best understood as attempts to bring discovery disputes to the Court's attention. Those requests that the Court construes as discovery disputes include Mr. Mallikarjun's contention that Travelers acted in "bad faith"[6] because its Rule 26(a) disclosures amounted to "dox[x]ing," and his request for the entry of a limited protective order. FAC ¶ 29, Relief Sought ¶ 2. An amended complaint is not the proper mechanism for a plaintiff to request the Court's assistance in resolving discovery disputes. *See, e.g.*, Individual Rules of Practice in Civil Cases, Rule 2(E)(ii).

The Court has addressed separately those portions of the FAC which the Court construes as raising discovery-related issues and disputes. In this opinion, the Court will only address those portions of Mr. Mallikarjun's FAC which raise new, substantive causes of action or claims against Travelers.

### A. Plaintiff Fails to State a Claim Under 31 U.S.C. § 313 or 15 U.S.C. § 8221

Mr. Mallikarjun fails to state a claim under either 31 U.S.C. § 313 or under 31 U.S.C. § 8221[7] because neither provision confers a private right of action either explicitly or impliedly. FAC ¶¶ 5 (citing Pub. L. 111–203, title V, § 502; 31 U.S.C. § 313), 11 (citing Pub. L. 111–203, title V, § 531; 15 U.S.C. § 8221).

---

[6] Specifically, Mr. Mallikarjun alleges that "[i]n the 26(a) shared by the defendant, it shows documents loaded with what I learnt [sic] is dox[x]ing. This was an act of bad faith on the part of Travelers." FAC ¶ 29. Given the context of Mr. Mallikarjun's allegation, the Court does not construe any allegation that Defendant acted in "bad faith" as an attempt to plead an independent tort cause of action. Rather, Mr. Mallikarjun complains of conduct occurring during discovery. Accordingly, the Court will treat these assertions as discovery disputes and not as new claims. And in any event, even if the Court were to read Mr. Mallikarjun's FAC as asserting a tort claim against Travelers for "bad faith," this claim would fail because New York does not recognize an independent cause of action for bad faith denial or insurance coverage. *See New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318–20 (1995).

[7] Mr. Mallikarjun asserts that his claims arise under two provisions of the Dodd-Frank Wall Street Reform and Consumer Act ("Dodd-Frank"), citing to Pub. L. 111–203, title V, § 502 and Pub. L. 111–203, title V, § 531. Although the Federal Insurance Office was established pursuant to Dodd-Frank, *see* Pub. L. 111–203, title V, § 502, the provision to which Mr. Mallikarjun cites is now codified at 31 U.S.C. § 313. And the second provision Mr. Mallikarjun cites, Pub. L. 111–203, title V, § 502, is codified at 15 U.S.C. § 8221. For purposes of this opinion, the Court refers to each provision by reference to the applicable statutory citation; it does not adopt Mr. Mallikarjun's convention of referring to both provisions as "Dodd-Frank."

31 U.S.C. § 313, "established within the Department of the Treasury the Federal Insurance Office."  31 U.S.C. § 313(a).[8]  31 U.S.C. § 313(b) provides that "[t]he Office shall be headed by a Director, who shall be appointed by the Secretary of the Treasury."  Under 31 U.S.C. § 313, the Federal Insurance Office "shall have the authority" to, among other functions, "monitor all aspects of the insurance industry," "monitor the extent to which traditionally underserved communities . . . have access to affordable insurance products," "coordinate Federal efforts and develop Federal policy on prudential aspects of international insurance matters," "determine . . . whether State insurance measures are preempted by covered agreements," and to "consult with the States . . . regarding insurance matters of national importance."  31 U.S.C. § 313(c)(1)(A)–(G).

> And 15 U.S.C. § 8221 provides that:

> If the State of domicile of a ceding insurer is an NAIC-accredited State, or has financial solvency requirements substantially similar to the requirements necessary for NAIC accreditation, and recognizes credit for reinsurance for the insurer's ceded risk, then no other State may deny such credit for reinsurance.  In addition . . . all laws, regulations, provisions, or other actions of State that is not the domiciliary State of the ceding insurer, except those with respect to taxes and assessments on insurance companies or insurance companies are preempted . . . .

15 U.S.C. § 8221(a), (b).

Not every federal statute creates a private cause of action.  A district court's determination as to whether a statute confers a private right of action should begin "'with the text and the structure'" of the statute.  *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).  A court "cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided."  *Id.* (citing *Touche Ross & Co. v. Redington*,

---

[8] The Court has conducted an exhaustive search of the caselaw and has been unable to identify a single federal case brought pursuant to this provision.  In fact, the only decision the Court has been able to identify with respect to 31 U.S.C. § 313 only cites this provision in passing.  *See Cozen O'Connor v. U.S. Dep't of Treasury*, 570 F. Supp. 2d 749 (E.D. Pa. 2008) ("OFAC is considered a law enforcement agency.  It is a part of Treasury's Office of Terrorism and Financial Intelligence, which has been statutorily designated as a law enforcement agency.  31 U.S.C.A. §§ 313(a)(6), (d).").

8

442 U.S. 560, 571 (1979)). Rather, where a statute does not explicitly provide for a private cause of action, a district court should "begin with the presumption that Congress did not intend one." *Id.* (internal quotation omitted). And "'Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of any explicit private right to enforce other sections was intentional.'" *Id.* (quoting *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 433 (2d Cir. 2002)).

Mr. Mallikarjun "provides no statutory basis, and the Court can find none," for finding a private right of action under statutory provisions to which he cites as the basis for his claims. *Oparaji v. ABN AMRO Mortg. Grp., Inc.*, No. 19 CV 01650, 2020 WL 9816011, at *16 (E.D.N.Y. Sept. 18, 2020) (collecting cases); *see also Beider v. Retrieval Masters Creditors Bureau, Inc.*, 146 F. Supp. 3d 465, 472 (E.D.N.Y. 2015) (declining to find a private right of action under Dodd-Frank for unfair, deceptive, or abusive acts or practices). Neither the text of 31 U.S.C. § 313—which established the Federal Insurance Office within the Department of Treasury—nor the text of 15 U.S.C. § 8221— which requires that a reinsurer be regulated exclusively by its home state—explicitly confers a private right of action.

Nor does the structure of either provision support a conclusion that Congress intended to confer a private right of action. 31 U.S.C. § 313, like the statutory provision at issue in *Oparaji*, merely "outline[s] duties, authorities, and enforcement powers" of the Federal Insurance Office; there is no indication that it confers any private rights or was intended to be subject to private enforcement. 2020 WL 9816011, at *16 ("[T]hese provisions of the statute, which outline duties, authorities, and powers of the Consumer Financial Protection Bureau."). Likewise for 15 U.S.C. § 8221, which established the home state rule for reinsurance policies: there is no basis in the structure of the statute from which to imply a private right of action. "Given the existence of an explicit private cause of action to enforce certain portions of Dodd-Frank, there is no basis to infer a

9

private cause of action" for those sections of Dodd-Frank upon which Mr. Mallikarjun relies. *Regnante v. Sec. & Exch. Offs.*, 134 F. Supp. 3d 749, 760 (S.D.N.Y. 2015) (noting that Dodd-Frank explicitly creates a private cause of action for whistleblowers alleging retaliatory discharge or other forms of discrimination).

Because nothing in the plain text of either provision nor in those provisions' structure suggests that Congress intended to create a private right action, the Court declines to read any "private causes of action into [those] provisions of Dodd-Frank that do not explicitly provide for them." *Beider*, 146 F. Supp. 3d at 472. Accordingly, the Court dismisses Plaintiff's claim against Travelers for violations of 31 U.S.C. § 313 and 31 U.S.C. § 8221.

### B. Plaintiff Fails to Adequately Plead a Negligence Claim

Mr. Mallikarjun's negligence claim fails because he does not allege any facts to support the conclusion that Travelers owed him an independent duty distinct from its contractual obligations under the Policy. "Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) (citing *Clark–Fitzpatrick v. Long Island R.R. Co.,* 70 N.Y.2d 382, 389 (1987)). A plaintiff may bring both a tort and a contract claim only "[w]here an independent tort duty is present." *Id.* (citing *Hargrave v. Oki Nursery, Inc.,* 636 F.2d 897, 898–99 (2d Cir. 1980); *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.,* 4 N.Y.2d 403, 408 (1958)). But where the "basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative." *Id.* (citing *New York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 316 (1995)); *see also Royal Park v. Deutsche Bank*, 2016 WL 439020, at *9.

Mr. Mallikarjun fails to plead any facts to suggest that Travelers owed him an independent duty of care beyond its contractual obligations under the Policy. Mr. Mallikarjun's own allegations

underscore that his negligence claim is premised entirely on Travelers's alleged dilatory conduct in processing his insurance claim—the exact conduct by Travelers that underlies his breach of contract claim.  FAC ¶¶ 4–11 (alleging that Travelers was negligent in issuing and withdrawing the Policy "unilaterally," in failing to timely communicate with Plaintiff as to the status of his insurance claim; and in failing to correct issues with respect to Plaintiff's payment of insurance premiums).  Because Mr. Mallikarjun has failed to plausibly allege that Travelers owed him a duty distinct from its contractual obligations under the Policy, the Court dismisses his negligence claim as duplicative.

### C.  Plaintiff Fails to Adequately Plead an Antitrust Claim

Mr. Mallikarjun has not plausibly pleaded a violation of either 15 U.S.C. § 13 (the "Robinson-Patman Act" or the "Act") or 15 U.S.C. § 14 (the "Clayton Act") because an insurance policy is not a good or commodity within the meaning of either statutory provision.[9]  First, Mr. Mallikarjun has failed to state a claim under the Robinson-Patman Act because insurance policies are not "commodities" within the meaning of the Act.  "The Robinson-Patman Act prohibits price discrimination that may have the effect of hindering competition in the marketplace, or inflicting economic or competitive injury on specific market actors."  *Innomed Labs, LLC v. ALZA Corp.*, 368 F.3d 148, 155 (2d Cir. 2004).  The Robinson-Patman Act provides that:

> It shall be unlawful for any person . . . either directly or indirectly, to discriminate in price between different purchasers of commodities . . . where such commodities are sold for use, consumption, or resale within the United States [and] where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly . . . .

15 U.S.C. § 13(a).

Importantly, "[t]he Robinson-Patman Act's prohibition on price discrimination extends only to transactions involving 'commodities.'"  *Innomed Labs, LLC*, 368 F.3d at 156 (citing 15 U.S.C.

---

[9] The Robinson-Patman Act amended the Clayton Act's price discrimination proscriptions to include prohibitions against "secondary-line discrimination."  *See George Haug Co. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 143 (2d Cir. 1998).

§ 13(a)); *see also Coal. For A Level Playing Field, L.L.C. v. AutoZone, Inc.*, 737 F. Supp. 2d 194 (S.D.N.Y. 2010) ('In order to establish a violation of the Act, plaintiff has the burden of proving that:  (i) a 'commodity' was sold in interstate commerce to at least two buyers;[10] (ii) the commodity sold to the disfavored purchaser was of 'like grade and quality' to that sold to the favored purchaser; (iii) the seller 'discriminate[d] in price between' the favored and disfavored purchaser; and (iv) that discrimination had a prohibited effect on competition.").  "Courts have strictly construed this term, holding that it denotes only 'tangible products of trade'" but not "intangible rights or services." *Innomed Labs, LLC*, 368 F.3d at 156 (quoting *May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1214 (9th Cir. 1980) (citing *Baum v. Invs. Diversified Servs.*, 409 F.2d 872, 874–75 (7th Cir. 1969)); then citing *Ambook Enters. v. Time Inc.*, 612 F.2d 604, 609–10 (2d Cir. 1979) (referencing the "strict view of the meaning of the term 'commodities'" taken by other circuits, and holding that sale of retail newspaper advertising was not a transaction involving commodities)).  Because an insurance policy is not a tangible good, it is not a "commodity" within the meaning of the Act.  For this reason alone, Mr. Mallikarjun has not stated a claim under the Robinson-Patman Act.  Accordingly, the Court dismisses this claim.

Second, Mr. Mallikarjun has failed to state a claim under the Clayton Act for the same reason he fails to state his Robinson-Patman Act claim—because an insurance policy is not a good.[11]  15 U.S.C. § 14 provides:

---

[10] Even assuming that Mr. Mallikarjun could identify a tangible commodity on which to base his Robinson-Patman Act claim; that claim would nonetheless still fail because Mr. Mallikarjun only makes allegations with respect to a single purchaser:  himself.

[11] Even assuming that Mr. Mallikarjun could identify a product on which to base his Clayton Act claim, that claim would nonetheless still fail.  "In order to prove an illegal 'tying' arrangement, a buyer must show . . . that one product was sold on the condition that another be purchased as well." *Bennett v. Cardinal Health Marmac Distributors, Inc.*, No. 02 CV 3095, 2003 WL 21738604, at *6 (E.D.N.Y. July 14, 2003) (internal citations and quotations omitted.").  "In order to prove an illegal exclusive dealing arrangement [a] plaintiff[] must show . . . that the defendants established a single distributor as the sole outlet for their products in a particular geographic area." *Id.* (internal citations and quotations omitted).  Mr. Mallikarjun alleges no facts to support either the existence of a tied product or the existence of an exclusive dealing relationship.  Nor does Mr. Mallikarjun specify whether he is alleging that Defendant engaged in an exclusive dealing arrangement or whether he is alleging that Defendant was tying its products.

> It shall be unlawful for any person . . . to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities . . . for use, consumption, or resale within the United States . . . or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition . . . that the . . . purchaser thereof shall not use or deal in the goods . . . of a competitor . . . where the effect . . . may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

15 U.S.C. § 14.  15 U.S.C. § 14 "provides a cause of action for anticompetitive tying and exclusive dealing arrangements."[12]  *Bennett*, 2003 WL 21738604, at *6.  "The [] elements of [an] [] illegal . . . tying claim are:  (1) that the tying arrangement affects a substantial amount of interstate commerce; (2) the two products are distinct; (3) the defendant actually tied the sale of the two products; and (4) the seller has appreciable market power in the tying market."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir. 2001), *abrogated on other grounds by In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006); *see also Reisner v. Gen. Motors Corp.*, 511 F. Supp. 1167, 1177 (S.D.N.Y. 1981), *aff'd on other grounds*, 671 F.2d 91 (2d Cir. 1982).  "[I]mportantly . . . [15 U.S.C. § 14] applies only to contracts 'for the sale of goods, wares, merchandise, machinery, supplies, or other commodities.'"  *Hudson Valley Asbestos Corp. v. Tougher Heating & Plumbing Co.*, 510 F.2d 1140, 1144–45 (2d Cir. 1975).  "It is, of course, well settled that [15 U.S.C. § 14] does not apply to sales of services."  *Id.* (citing *United States v. Jerrold Electronics Corp.,* 187 F. Supp. 545, 554 (E.D. Pa. 1960), *aff'd per curiam*, 365 U.S. 567 (1961)).

Again, an insurance policy is not a good as required to state a claim under the Clayton Act. *Tampa Elec. Co..*, 365 U.S. at 327 ("First, the line of commerce, *i.e.*, the type of goods, wares or merchandise, etc. involved must be determined . . . on the basis of the facts peculiar to the case."); *Bennett*, 2003 WL 21738604, at *6 ("Plaintiffs have failed to state a tying claim because they have not

---

[12] The Supreme Court has explained that "even though a contract is found to be an exclusive-dealing arrangement, it does not violate the section unless the court believes it probable that performance of the contract will foreclose competition in a substantial share of the line of commerce affected."  *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961).  For this reason too, Mr. Mallikarjun has failed to state a claim under the Clayton Act.

alleged a tying product or a tied product."). But "under the Clayton Act both products must be goods." *Reisner*, 511 F. Supp. at 1177 (noting that "The first of these Clayton Act requirements need not detain us because clearly the products involved here are goods"). Accordingly, the Court dismisses this claim.

### D. Plaintiff Cannot Assert Claims or Seek Damages on Behalf of Persons Not Covered by the Policy

In his FAC, Mr. Mallikarjun requests monetary damages on behalf of third parties as follows: $2,000,000 in the name of L Mallikarjun Trust; $2,000,000 in the name of M Mallikarjun Trust; and $1,311,078.94 in the name of "SPS." FAC, Relief Sought ¶¶ 4(a)–(c). It is unclear why Mr. Mallikarjun is requesting such relief (or how the cost of dealing with his flooded apartment exceeded $5,000,000). But to the extent that he is seeking to pursue claims on behalf of these third-party entities, Mr. Mallikarjun's request suffers from two principle failures: (1) Mr. Mallikarjun cannot pursue claims on behalf of these entities *pro se*; and (2) Mr. Mallikarjun has not identified a cause of action that would entitle these third parties to any relief from Travelers.

First, even if Mr. Mallikarjun could plead facts sufficient to plausibly allege that any such third parties are entitled to recovery under the Policy—he cannot represent those third parties as a nonlawyer proceeding *pro se.* "The circumstances under which civil litigants may appear without counsel are limited by statute." *U.S. ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008). 28 U.S.C. § 1654 provides that "[i]n all courts of the United States the parties may plead and conduct *their own cases personally* or by counsel." 28 U.S.C. § 1654 (emphasis added). "Because the statute permits parties only to 'plead and conduct their *own* cases personally'" the Second Circuit has held that "'an individual who is not licensed as an attorney "may not appear on another person's behalf in the other's cause.""" *Mergent Servs.*, 540 F.3d 89, 92 (quoting 28 U.S.C. § 1654; then quoting *Machadio v. Apfel*, 276 F.3d 103, 106 (2d Cir. 2002) (quoting *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998))).

14

And Mr. Mallikarjun cannot represent the trusts *pro se* because corporations, nonprofit organizations, and other artificial entities *must* appear before the Court through counsel.  *See Rowland v. California Men's Colony*, 506 U.S. 194, 201–02; *see City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129, 130 (2d Cir. 2011); *see also Bell v. S. Bay Eur. Corp.*, 486 F. Supp. 2d 257, 259 (S.D.N.Y. 2007) ("A trust is deemed an artificial entity for the purposes of the rule barring a nonlawyer trustee from representing the interests of the trust.").

Second, Mr. Mallikarjun has not identified any cause of action that would entitle these third parties to relief because Mr. Mallikarjun has not plausibly pleaded that anyone except him—or his real estate business, Apple Slice Homes—is entitled to recover under the Policy.  Mr. Mallikarjun is the sole "Named Insured"[13] under the Policy and Apple Slice Homes LLC is the sole named "Additional Insured."  Dkt. No. 29-2, Ex. B at 4–5.  "Under New York law, 'it is well-settled that a party that is not named either as an insured or additional insured on the face of the insurance policy is not entitled to coverage.'"  *Harleysville Preferred Ins. Co. v. Van Dyke*, No. 23-CV-06183, 2025 WL 2773100, at *6 (S.D.N.Y. Sept. 29, 2025) (quoting *Mikaelian v. Liberty Mut. Ins.*, No. 15-CV-6182, 2016 WL 4702106, at *4 (E.D.N.Y. Sept. 8, 2016); then citing *Nat'l Abatement Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 824 N.Y.S.2d 230, 232 (1st Dep't 2006) (noting that a party is "not entitled to coverage if not named as an insured or an additional insured on the face of the policy")).  "New York insurance law instructs [] that '[w]hen determining whether a third party is an additional insured under an insurance policy, a court must ascertain the intention of the parties to the policy, as determined from within the four corners of the policy itself.'"  *Cincinnati Ins. Co. v. Harleysville Ins. Co.*, 709 F. App'x 71, 74 (2d Cir. 2017) (summary order) (alterations in original) (quoting *77 Water St., Inc. v. JTC Painting Decorating Corp.*, 50 N.Y.S.3d 471, 475 (2d Dep't 2017)).

---

[13] The Policy defines "insured" as the "Named Insured" "and the following residents of your household:  (a) your relatives; (b) any other person under the age of 21 who is in the care of any person named above."  Dkt. No. 29-2, Ex. B at 12 (citation modified).

Plaintiff does not allege any facts to support the conclusion that "L Mallikarjun Trust," "M Mallikarjun Trust," "SPS," are "insureds" as defined by the Policy or are otherwise covered by it. Specifically, Plaintiff fails to allege that any of these third parties are residents of his household, nor does he allege that they are his relatives or under the age of twenty-one and in Mr. Mallikarjun's care. Dkt. No. 29-2, Ex. B at 12 (defining "insured"). Nor has the Court identified any provision in the Policy which purports to add any of these third parties as an insured or additional insured. *Harleysville Preferred Ins. Co. v. Van Dyke*, No. 23-CV-06183, 2025 WL 2773100, at \*6 (S.D.N.Y. Sept. 29, 2025). In sum, Mr. Mallikarjun cannot seek damages on behalf of the third-party trusts.

## V.    LEAVE TO AMEND

The Court denies Plaintiff leave to amend his claims under 31 U.S.C. § 313, 31 U.S.C. § 8221, the Robinson-Patman Act, and the Clayton Act because any further amendment would be futile. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

Nevertheless, leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim . . . ." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,

16

681 F.3d 114, 119 (2d Cir. 2012)). "[R]epeated failure to cure deficiencies by amendments previously allowed" warrants denial of leave to amend. *Dluhos v. Floating and Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).

No amendment can cure the deficiencies identified with respect to Mr. Mallikarjun's claims pursuant to 31 U.S.C. § 313, 31 U.S.C. § 8221, the Robinson-Patman Act, and the Clayton Act. First, because neither 31 U.S.C. § 313 nor 31 U.S.C. § 8221 confers a private right of action, Mr. Mallikarjun cannot cure the deficiencies with respect to those claims by repleading. And because Mr. Mallikarjun cannot allege that Defendant sold him a good (a commodity or product) within the meaning of either the Robinson-Patman Act or the Clayton Act, he cannot cure that deficiency by repleading. Accordingly, any amendment of Plaintiff's claims under Dodd-Frank, the Robinson-Patman Act, and the Clayton Act would be futile.

The Court cannot conclude however that amendment of Plaintiff's negligence claim would be futile. Mr. Mallikarjun could potentially allege additional facts to support a conclusion that Travelers owed him a duty distinct from its contractual obligations under the Policy. For these reasons, the Court cannot conclude that any amendment of Mr. Mallikarjun's negligence claims would be futile.

## VI.    CONCLUSION

For the forgoing reasons, Defendant's motion to dismiss is GRANTED. Plaintiff's Dodd-Frank claims are dismissed with prejudice and without leave to amend. Plaintiff's Robinson-Patman Act claim is dismissed with prejudice and without leave to amend. Plaintiff's Clayton Act claim is dismissed with prejudice and without leave to amend. And Plaintiff's negligence claims are dismissed without prejudice and with leave to amend. Plaintiff is granted leave to file an amended

17

complaint only to add new facts that will correct the deficiencies identified with respect to his claims for negligence. Plaintiff is directed that he cannot add any new claims to any amended complaint without prior leave from the Court. Any amended complaint must be filed no later than fourteen days from the entry of this order.

The Court requests that counsel for Defendant provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is directed to terminate the motion pending at Dkt. No. 28 and to mail a copy of this opinion to Plaintiff by certified mail.

SO ORDERED.

Dated: February 25, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge